Good morning everyone. Our first case for today is Breyley v. Fuchs. Ms. Holey, is that correct? You can proceed whenever you're ready. Thank you. Good morning. May it please the court. Mr. Breyley did everything right. After he was assaulted and from his segregation cell, he filed a timely complaint by mail consistent with the code and consistent with the instructions of an officer. For good measure, he documented in his contemporaneous journal that he had filled out a complaint form and he wrote letters to three other inmates confirming that he filled out a complaint form. Based on that evidence, was there a pay-the-hearing conducted? There was no pay-the-hearing conducted, Your Honor. When Mr. Breyley learned that the institution did not process his filed a second complaint. Ms. Holey, the letters that you referred to, they're not, the letters themselves are not in the record, is that correct? That's correct, Judge Lee. The letters themselves are not in the record, but we have sworn testimony from Mr. Breyley in his declaration that he did send those letters. So he alerted staff to their error in his follow-up complaint and he requested his relief additional time to refile the complaint. I think the timeline is significant when you say that he did follow up. I noticed that in the complaint on the form, it indicates that you should receive a receipt within five days. Would that not have put him on notice that he needed to do something in advance? So, Judge Pryor, no, it wouldn't. This court has never allowed informal instructions outside of the four corners of the code to create new hurdles that the inmate needs to encourages or invites non-compliance with the code and the inmate follows that instruction. That cannot be held against the inmate in their journey to exhaust, but this court has never said that staff can create new hurdles outside of the text. What will we do with Lockett then? So, under Lockett, the analysis depends a little bit on how this court reads the 2014 code, which is no longer in effect, as you all know. The analysis depends on that, but the outcome doesn't. So, our position is that the code in 2014 just created an internal obligation on the part... I want to go back to your argument when you said we have never gone outside the four corners of the code, and so I need you to lay that against the holding in Lockett. So, in Lockett, the code was very clear. It was the appeal provision of the 2014 version of the code. The appeal provision did not require the inmate, after five days, to notify staff. That went outside the four corners of the code, using your language. So, let me redirect. Can you tell me the distinction that we're making between the form here and our holding in Lockett? So, just to make sure I understand your question, your point is that in Lockett, this court kind of created a new obligation that's outside the four corners of the code? I'm asking. It did. It said... the holding of Lockett is that when there's a clear receipt provision, the inmate has... a red flag should go off in their mind, and they should follow up. And so, this court did essentially say, look, there's nothing in the code that says you need to follow up, but we're creating that obligation. So, that is true. If this court, of course, interprets the PLRA law to create some sort of obligation, that's a little bit of a separate issue from when staff tries to add an additional obligation. But is it, though, when the form says there's a receipt provision included in the complaint form that says within five days, you should receive a receipt? So, I'm asking you, counsel, to distinguish the holding in Lockett, and how we can distinguish that from the complaint form that says within five days of an initial complaint, you should receive a receipt. Is that a receipt provision? Is that a distinction? I just need some clarity on the law. I don't... I do not think that that's a receipt provision. Going back to Pozo and very early PLRA cases in this court, the court said that what counts is the administrative rules. That form is not an administrative rule. You're right. On the bottom of the form, it did say you can expect a receipt in five days. But, in my view, that's the state trying to amend the code by informal practice. And what they should have done, and what they did eventually do to their credit, is amend the code, recognizing that there was a problem there. So, you don't think that statement on the form should inform our reading of the code provision? I mean, one of the issues in dispute is whether acknowledging something in writing means sending a written notice to the person submitting the complaint versus just noting in some sort of ledger or spreadsheet or something, right? And so, would the statement in the complaint form, should that influence the way we interpret the code? Or are we just to interpret the code as is without any reference to the complaint form itself? It should not influence the way that you interpret the code. In recent cases like Hacker and King, both two 2023 cases from this court, the court said that what counts is how the ordinary inmate would read the code. And so, we look at the text of the code. And here, the code is very clear. It does not say that the staff needs to give anything to the inmate. And that omission is meaningful because when you look at other provisions of the code, they did direct the staff to give a document to the inmate. Is that how you're distinguishing the facts of this case from Lockett? Lockett is distinguishable on a few grounds, Your Honor. The first is that, well, the first is that the code provision in Lockett, the appeal provision, was very clear. This provision is, at best, not clear. But I need to, I mean, we have to read things sensibly. And yes, the Lockett provision said, issue a document. We know what it is and we know to whom it's supposed to go. Whereas here, in the governing version, we just have the ICE shall review and acknowledge each complaint. And as Judge Lee was just saying, I take it you are demoting the acknowledgement to just jotting down something on a spreadsheet or in a book or wherever it is you put it. But I think that's a very strained reading of the word acknowledge. And it runs into other inconsistencies within the code. Isn't it just as likely that acknowledge, of course, means go to the inmate and they realized it was not as clear as it could have been, so they amended the code later? I think as an initial matter, it's important to keep in mind that our interpretation of this code is what stands between inmates' ability to pursue important claims in federal court. And so, just that it's in theory possible to read it that way, I don't think that we should. This court has taken caution before putting words into a statute or administrative rule that are not there. And it should do so in this context. But you're arguing, are you arguing then that we're obliged to interpret the code in the manner most But you do read the code how an ordinary inmate would. And I think it just doesn't include the words to the inmate. And I think that that's meaningful. And it's particularly meaningful because we do need to give a common sense reading based on the ordinary inmate. And I think that contrast between the code provision here and the code provision in Lockett is just so critical because it was so clear there. And it's just not clear here. What about, I mean, looking at the code as a whole, there's a provision for group complaints, right? 310.10.3. And that says the I.C.E. shall issue a receipt acknowledging the complaint only to the spokesperson. Well, that again seems to me to be a signal that this receipt acknowledging the complaint is going to the complainer. And if it's a big group of people complaining, it's just the spokesperson. But it would be weird to have that language and then not have the other one refer to a receipt to the inmate who made the complaint. I agree with you, Judge Wood, but I draw a different inference. I think that that's further confirmation that Wisconsin knew to use language directing who would receive the provisions and they didn't use it here. And I think just to step back a moment, we are talking about the ordinary inmate reading this code. We can do, you know, we can apply interpretive presumptions and canons and cross-check against other provisions, but the ordinary inmate isn't trained in statutory interpretation quite as well as this court is. And I think that's important to keep in mind. So cross-checking against these other provisions isn't necessarily something that an inmate operating in good faith would do while trying their best to digest this. Would you require then for us to read the code, if it doesn't say to the inmate, what do we do with the rest of the process? We have the initial complaint process, we have the reviewing process, we have the appeal process. And so do, is it your contention that because the language does not say to the inmate, doesn't direct the inmate as to what to do next, then do we, what do we do with the rest of the process? So from there, the inmate is left a little bit in the dark, and I think that was a problem, and that's why Wisconsin fixed the problem. So the inmate, once you file your complaint, if you're not entitled to that acknowledgement, you do just kind of have no choice but to wait around for a decision on your complaint. It could be rejected, it could be returned to you for correction, or it could be accepted. And I contributes to why it was so reasonable that Mr. Lockett didn't have a red flag, or sorry, Mr. Braley didn't have a red flag go off in his head right away. But what, isn't there some diligence requirement? Another aspect of this is the way he found out that apparently things weren't going the way they should was this chance encounter he had with this individual. He wasn't following up, I mean, that was like day 23, if I'm remembering correctly. So why couldn't you independently say that Mr. Braley just wasn't diligent enough in following up on this? So I see that I'm in my rebuttal time, but I'd like to answer your question. Mr. Braley was in segregation until January 20th, and in New Lisbon, that means he was behind a solid metal door. He, basically the only way to get anything in or out of that is that small slot where he put mail. And so he didn't have the capacity to kind of summon someone or just run into anyone while he was in segregation and follow up. Even once he was released from segregation, he didn't go back to his usual block, which is the D block, he went to C block. And the importance of that is that in D block, he has a key from his living quarters and kind of the eating quarters or the shared areas, and so he has more freedom of movement. He was still in the C block, which is still a locked unit, at the time that he did see finally an ICE, in that case it was ICE Fredlund, and he immediately seized that opportunity to say, what's going on with my complaint? And I think his diligence is obvious. The very same day that he made that inquiry, he immediately filed a follow-up complaint. And he really did what this court would later demand in Lockett, years before Lockett was even decided. And he kind of predicted that this was an appropriate process, and that's reflected in the fact that Wisconsin has now adopted his exact steps as the procedure that an inmate should follow in the event of a missing complaint. Ms. Hulley, in assuming, hypothetically speaking, that we find a dispute of fact here, Mr. Braley did not ask for a payee hearing below. Is that a problem? That is not a problem. So in Smallwood, which is a recent decision, the inmate there also did not request a payee hearing below, but this court still remanded for a payee hearing. And I think one of the reasons for that is that this court's decisions are so clear that the payee obligation is a mandatory one on the district court, and so the failure to formally request one is not an issue here. The district court should have held the payee hearing in the event of a factual dispute, which of course, if this court sees a factual dispute, I won't fight you too hard on that. Thank you very much. Thank you. Mr. Morris. Good morning. May it please the court, Assistant Attorney General Michael Morris for the appellees. I would like to start out by responding to what a worthy opponent just said in response to Judge Wood's question about the lack of diligence that Braley exhibited after he should have known that he received a receipt. And her response was that he was sagging, he couldn't follow up. That's demonstrably not true in this case. I mean, first of all, according to his declaration, he went into SAG on December the 25th, and in his declaration he states, I could have filed an inmate complaint then and there. The central tenet to his entire case is that he filed a complaint on January 2nd when he was in segregation. And if his diary is to be believed, there are multiple instances in this diary. Do we assess that on the appellate level? Whether or not it's to be believed if there was no paybee hearing below? Well, I'm just, it's in the record and so I just want to point out for the court. I just want to walk back the language if it is to be believed. Is that the position we should be in? Well, we point out in our brief that there's some authenticity issues with it, but just for the sake of this argument in response to opposing counsel's argument. Mr. Braley notes... I just think we should be careful with the use of language. I'll just represent to the court then that inmates in segregation can still communicate. They refer to them as kites. They're information requests that they can send out to any staff member requesting information, and Mr. Braley knew how to do that. According to his journal, he did that many times while he was in segregation. Obviously, he could have filed a follow-up complaint if he filed the original complaint. So, this argument that he was in segregation and was therefore unable to follow up on January 9th, the latest when he knew he should have received a receipt, has no merit. Let's talk about that. How would he have been on notice that he should have received a receipt? Let's look at the POZO language, and I think that's where counsel was headed before we kind of redirected the conversation. When we're looking at that POZO case, we held there that a prisoner must file complaints and follow the appeal process as outlined in the administrative rules as required, and so the representation is that he should have known within five days that he should have received a receipt. Where are we getting kind of that argument? What supports that argument? The plain language... I mean, there are many authorities for that. First of all, the plain language of the code. But are you relying on 310.11 too? Because that's precisely what your opponents are saying isn't so plain. It just says the ICE shall review and acknowledge each complaint in writing within five working days, but it doesn't say to whom, acknowledge to whom, review and, you know, record, acknowledge. There's some ambiguity there, and it's unfair to ask inmates to follow some vague procedure that they may not fully understand, and he might not have known. I mean, your whole argument is that when he didn't get some acknowledgement, he knew that something had gone wrong, but if he wasn't expecting an acknowledgement, then how should he have known that? But he was saying that it contains both his declaration, where he says, I never received a notification of receipt, so then I saw Ms. Fraydlin, and I asked her why I hadn't received it. That's in his declaration. Right, and he talks about he's waiting patiently, but you're fixed on the number of days, and if there is a fixed number of days, that's one thing. If it's more discretionary with the complaint authorities, then that's another thing. He might not have realized that he was, that it was out of time. Judge Wood, respectfully, I just don't think there's any way to read Mr. Braley's own statements. He knew he was supposed to receive a receipt. Where do you get five days out of his own statements? Well, you get the five days from the rule, and as you said, you have to read the rule sensibly, and I think it was also you, Judge Wood, who pointed out that the group complaint language contains a third way to provide that there will be a receipt, so that, so we have the clearest language, the cleanest language. Well, that's a different situation, but why shouldn't we read that as the drafters expecting that a different procedure is appropriate for group complaints than is for individual complaints? Well, I actually read it as the drafters, I don't know if it was maybe, you know, regrettable editing, but the group complaint provision sort of combines the language in the, in 310.11.2 with the appeal. The appeal talks about issuing a receipt to the inmate, the complaint talks about acknowledging the complaint, and the group complaint sort of combines those, says shall issue a receipt acknowledging the complaint to the spokesman. So I, so there were three different ways in here. But it might be provided for. So if we look just at 310.11, which is the provision that we're considering for purposes of Mr. Briley's case, if we take the declaration to represent, as you've argued this morning, that Mr. Briley was on notice, that he should have received some type of notification, if we're looking at 310.11, where would that have notified Mr. Briley that he had, he should have expected something within five days? The plain language of sub two. Acknowledge each complaint in writing within five working days. And where does it, and where would that acknowledgement have gone to? To Briley. And we know that because there is a receipt in this record for the complaint that he undisputably filed in January. We have a receipt. We don't know whether that was as a matter of right or just administrative discretion. If there's just a lack of detail in this sub two of 310.11, doesn't say who gets the acknowledgement. Judge Wood, I think when you combine the code as a whole, there's a receipt provision for every step, whether it's a group complaint, the initial complaint, the appeal, with the undisputable fact that for the complaint he filed, he received a receipt. There is no other way to read this, that he knew he should have received a receipt consistent with his own testimony. And then we're squarely under the Lockett holding. So Mr. Morse, that brings us to Lockett then. In Lockett, they were addressing a fact situation where the, Mr. Lockett, the inmate, made a bald assertion of a timely filing. In fact, I went back to the docket to take a look at the affidavit that Mr. Lockett filed, and it's a one-page affidavit, and it just says, I placed my appeal in the box. Here, we have more than a bald assertion. We have a contemporaneous diary entry that Mr. Briley says he maintained that notes, or it seems to note, that he filed the or submitted the complaint. And that's what we're here to try to figure out, right, is whether or not he submitted the complaint. Not necessarily whether he got a receipt of the complaint. And so given that, why is this case not distinguishable on the facts from Lockett? And if so, why isn't it a question of fact that needs to be resolved by the trial court during a PAVI hearing? So Judge Wood, I actually read Lockett a little bit differently. I think what the court said in Lockett is when the state puts forward evidence that there was a failure to exhaust, that there was no complaint, you have to do more than just show that you filed the complaint because we have a receipt system. Well, no, let me read you the sentence. It says, having failed to make that inquiry, i.e., why he didn't receive the receipt, he may not now counter evidence that the prison did not of a timely filing. So in Lockett, it seems like the court, what was animating the court's decision was that on the one hand, we have the prison system that maintained that the appeal wasn't filed. They had an affidavit by the person that managed all of the appeals saying there was no appeal filed. And on the other hand, I don't really care what they say. I filed one. And so in that case, the court went back to look at whether or not, you know, receipt was mandatory and what obligations Mr. Lockett may have had to follow up. And frankly, between you and me, I'm not really sure where the genesis of that obligation comes from. But in any event, here though, like I said, we have more than that. And so at some point, right, there, so what if there was another inmate that said, you know what, I saw him do it. I saw him submit it. Would you still then rely on Lockett and say, well no, in that case, you know, even in that situation, Lockett would apply and he would have to, you know, grieve the fact that he didn't file a receipt. At some point, there's a material dispute of fact, isn't it? Isn't there? No, Judge, that's that's not how I read Lockett. So let me ask you this. So in this hypothetical scenario where we have a declaration from his cellmate, hypothetically, that says, you know what, on that day I saw him submit his complaint, okay, and he didn't do anything to follow up, he didn't receive a receipt, right, and so he didn't grieve the fact that he didn't receive a receipt. Under that fact scenario, do you still contend that Lockett would apply? Yes, Judge. I just want to make this point really clear. What Lockett says is, you have your, you have your evidence that you filed your complaint. They say you did. To get, to create a dispute of fact, you also have to submit evidence that you made a reasonable follow-up. We're essentially, we're not trying to, we're not trying to resolve whether you filed it or not. We're trying to see if you did what a reasonable person would do. But under the PLRA, the obligation to grieve is not an obligation to follow up the lack of a receipt. It's the obligation to file the complaint in the first instance, right? Well, that's true, but here there is no dispute that the prison didn't have one, and so what... Well, no. Actually, there is a dispute. That's not the record. Right, I mean, there is a dispute, right? I'd like to just read from, so I can maybe defend my position here. It says, the defense is asserted. Lockett had to introduce sufficient evidence to demonstrate that there was a genuine issue, a triable fact, with respect to that defense. His own affidavit is relevant, but it's insufficient to establish that he ever exhausted the opportunity to resolve that matter. In essence, you still have to show that you made a reasonable follow-up. That's what we're here to decide. No, you're misreading the rule of an affidavit. Affidavits by themselves are self-serving affidavits. What he included in that affidavit that we're not dealing with is, he included within that declaration, I made a journal entry of when I submitted it to support my bold or bald assertion that I did it, and I also, contemporaneous with that, wrote three letters to three inmates letting them know also that I have filed it. And so, that's what we're trying to tease out. In other words, the possibility of a factual record that would require the resolution of disputed facts would require a court to figure out, did you actually file it or not? We understand the institution says no. We understand he's got this evidence that says yes. If he did file it, then he exhausted. What this court does in this situation under Lockett is not look at that. It looks at, what did you do when you didn't receive the receipt? Did you follow up? I think we're not dealing with that. Lockett was under 310.13, which had a receipt provision to the inmate. We are not under 310.13. We're under 310.11. Which also has a receipt provision, Your Honor. So the question is, what did you do? Did you view the lack of a receipt as a red flag and follow up? We're not trying to relitigate whether you filed the complaint or not. Mr. Morris. Assume, another hypo, assume that an it's uncontroverted that the grievance is filed or the complaint. But let's say he didn't receive a receipt and so he didn't follow up. In that scenario, would you still argue under Lockett that he did not exhaust his administrative remedies? No. No. If there's no dispute, then I think we're under Dolby Chandler. If there's no dispute. Right. And that's because the central inquiry is whether or not he filed that initial grievance, right? Not in this case. Not in Lockett. Because there is no, there is no filed complaint in the prison system. So we, he has his evidence that he filed it fine. So did Lockett. There's no dispute he didn't receive a receipt. Same in Lockett. So then the inquiry is, did you also make a reasonable follow-up? The answer here is no. How do you square Lockett with our cases instructing prisoners to follow rules and mandating strict compliance? I see that my time is up. You can go ahead and answer that question. Well, I think that the rules here are clear. I think that Lockett failed to strictly comply. I think this court has always required strict compliance and I think the rules here put Lockett on or put Braley on notice that he was entitled to a receipt. He knew he was entitled to a receipt. He didn't receive one. So I think we're under this court's holding and in Lockett as the district court held, I would ask that the court affirm. Thank you. Thank you, Mr. Morris. Ms. Holey? I want to make three brief points in rebuttal. Counsel said that Mr. Braley should have known from the text that he was going to receive a receipt or his subjective expectation was that he's going to receive a receipt and I would like to dispute both of those points. Just very briefly, again, the text is not clear. The plain text does not say issue anything to the inmate. We have a presumption that if you amend a law, you change the law by creating a new right or withdrawing an existing right. Wisconsin amended the code here and we should take some meaning from that. So the text is not clear. Second, Mr. Braley's expectations do not matter. This court has established an objective standard. We put ourselves in the shoes of the ordinary inmate trying to navigate the code. If we allowed the analysis to be about what each individual inmate expected, I think that that would cause problems for this court, for Wisconsin, and for the inmates. This court has emphasized in cases like Williams v. Wexford recently that code provisions need to be transparent and we should stick to the text of the code and not subjective expectations. And then finally, there was a lot of discussion about factual disputes and payee. Our initial contention is that this court should remand for consideration on the merits. This court has done that recently without a payee hearing, just remand for consideration in cases like Williams and Hacker and King. However, to the extent there is a factual dispute here, it would also be appropriate to remand for a payee hearing because we agree, Judge Lee, the central issue here is whether he or she is a defendant. Thank you. Thank you. Thank you, Ms. Holy, and thank you to your colleagues and your firm for taking on this appeal and your service to the court. Mr. Morse, thank you very much.